IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMES T. SMITH** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number |
| | ) | **5:07-cv-1668-UWC** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This Court finds the Administrative Law Judge's ("ALJ") decision, which has become the decision of the Commissioner, is not supported by substantial evidence.  Therefore, for the reasons elaborated herein, the Court will **REMAND** the decision denying benefits..

**I.  Procedural History**

Plaintiff filed an application for disability insurance and Supplemental Security income benefits in April 2005.  (R. 12.)  This application was denied administratively at the initial and reconsideration stages.  Plaintiff requested a hearing before an ALJ, which was held on February 1, 2007, in Huntsville, Alabama.  (R. 12, 20.)  On March 19, 2007,

1

the ALJ denied the claim. (R. 19.) This denial became the final decision of the Commissioner of the SSA when the Appeals Council refused to grant review on July 12, 2007. (R. 4.) Having timely pursued and exhausted his administrative remedies, Plaintiff filed an action for judicial review in Federal District Court pursuant to section 1631 of the Social Security Act, 42 U.S.C. § 1383(c)(3).

## II.  Factual Background

At the time of the hearing, Plaintiff was a 40 year-old man who completed tenth grade. (R. 26.) Plaintiff has past relevant work experience as a landscaper laborer and construction worker. (R. 39-40.) Plaintiff's alleged onset date is October 31, 2005. (R. 22.) He suffers from hypertension, diabetes, foot pain relating to his diabetes and scoliosis/low back pain.[1] He receives free medication from a clinic for his hypertension and diabetes. However, the clinic does not dispense free pain medications; accordingly, he takes only over-the-counter medications for his back pain. (R. 30.)

In August 1998, Plaintiff underwent surgery for a herniated disc at L5-S1. (R. 213.) Although his condition initially improved, by August 13, 1998, he reported the pain was no better than it had been prior to surgery. (R. 209.) His treating physician, Dr. Robert L. Hash, requested an MRI. The November 25, 1998, MRI revealed a moderate amount of scarring, but no recurrent disc herniation or other significant abnormality. (R. 208.) A nerve conduction study of Plaintiff's leg conducted the following month, on

---

[1] There is nothing in the record to support a finding that Plaintiff's diabetes or hypertension might be disabling.

December 30, 1998, also revealed no abnormal activity. (R. 207.) Based upon these findings, Dr. Hash's January 1999 notes indicate he was going to obtain a functional capacity report. (R. 206.) [2]

By February 26, Dr. Hash concluded Plaintiff had reached maximum medical improvement and had a 10% permanent partial impairment to the body as a whole. Dr. Hash also approved of medical restrictions recommended by HealthSouth for six months. After that time, Plaintiff could return to full activities. (R. 205.)

When Plaintiff returned three months later on May 18, 1999, his back pain was better. However, he still had pain down the side of his leg. He also had severe disc narrowing. Dr. Hash recommended steroids or a medical procedure if Plaintiff's condition did not improve. (R. 202.) The following week, Dr. Hash noted that he did not believe the steroid injections would help, but the insurance carrier wanted the procedure performed. (R. 202.)

Two months later on July 16, 1999, Plaintiff returned in a wheelchair in "lots of pain." He continued to complain of severe pain radiating down the back of his left leg. Dr. Hash recommended decompression surgery and spinal fusion. Dr. Hash took Plaintiff off all work duties. (R. 201.)

By October 5, 1999, Dr. Hash reported that Plaintiff's MRI showed forminal stenosis with a disc protrusion at L5-S1 and Plaintiff continued to have pain down his left

---

[2] It appears that the report was not included in the record.

leg.  Dr. Hash recommend decompression and fusion, but the procedure had not yet been approved.  He also noted: "At this point, I feel I have done all I can for Mr. Smith without performing a surgical procedure."  (R. 199.)

The records indicate treatment again five years later in March 2004 when Plaintiff visited the free clinic and complained of back pain and requested medication for his blood sugar.  (R. 161-2.)

In March 2005 he visited the emergency room complaining of low back pain.  He was using a cane at that time.  (R. 182.)  In August he returned to the emergency room.  His radiology report showed loss of lordosis, which may have been caused by muscle spasm.  He also had narrowing of the L5-S1 disc space.  The radiologist suspected degenerative disc disease.  (R. 113.)  By October 25, 2005, Plaintiff returned to the emergency room again complaining of sharp low back pain and muscle spasms.  The pain was worse after doing construction work the previous day.  (R. 97, 101.)

On January 5, 2006, he complained to emergency room physicians of constant throbbing back pain and was using a cane.  He had pain on straight leg raise.  (R. 191, 192.)  In May he again complained of low back pain and visited the emergency room.  (R. 184.)  By November, he returned complaining of back pain after having tried to lift a television set.  (R. 221, 224.)  The following month he returned complaining of sharp severe pain.  (R. 219.)

During 2006 he also visited the free clinic on at least five occasions complaining

of back pain and other matters. (R. 156-58.)

At the administrative hearing, Plaintiff testified that from 2002 through October 2005, he was employed at a construction site, but he did not engage in construction related activities due to his back condition. (R. 36-39.) He does admit that he visited the emergency room in October 2005 after trying to help a co-worker lift a tool box off the truck and after trying to help dig a hole. (*Id*.) However, he generally drove a truck and swept out the truck. (*Id*.)

After the administrative hearing, the ALJ found that Plaintiff suffers from severe impairments, but that the impairments do not meet or equal a listing. (R 15.) The ALJ further found that because of Plaintiff's impairments, Plaintiff could not perform his past relevant work. (R. 15.) However, the ALJ noted that Plaintiff took no prescription medications for his back. Additionally, Plaintiff's MRI showed only mild scoliosis with degenerative disc disease. The ALJ also noted that Plaintiff worked in 2005 at a construction site where he drove a truck and swept out the truck. Plaintiff also admitted that he visited the emergency room in 2005 after trying help dig a hole on the construction site. Given this evidence, the ALJ concluded that Plaintiff could perform light duty work and thus was not disabled from October 31, 2005 through the date of the decision. (R. 13.)

### III.  Controlling Legal Principles

A disability claimant has a heavy, but not insuperable, burden to establish

entitlement to benefits. *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978). The district court's standard or scope of review is limited to determining whether the substantial evidence support's the Commissioner's decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Additionally, the Court must determine whether proper legal standards were applied. *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)).

Substantial evidence is more than a scintilla, but less than a preponderance. It is such evidence a reasonable mind would accept as adequate to support a conclusion. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). In contrast, the Commissioner's legal conclusions are more closely scrutinized. "The [Commissioner's] failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 969 F.2d 1143, 1145-45 (11th Cir. 1991).

Applicable agency regulations require a sequential evaluation of adult disability claims. 20 C.F.R. § 404.1520 (1983). The first consideration is whether the claimant is working. If the claimant is working, she is not disabled. If the claimant is not working, the Commissioner must determine whether the claimant suffers from a severe impairment. If the claimant does not suffer from a severe impairment, she is not disabled. If the claimant suffers from a severe impairment, then the Commissioner must consider

whether the claimant meets any of the listings in 20 C.F.R. pt 404, subpt P, app. 1 ("Listing"), which details "impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1520(a). *See Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985). If the claimant's medical profile meets the criteria for an impairment in the "Listing," then the claimant is disabled by law and no further inquiry is necessary.

The burden is on the claimant to show that she meets the criteria under the listing. To meet the listing, the claimant must be (1) diagnosed with a condition that is listed or its equivalent, and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and duration requirement. *See Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

When a claimant's "severe" impairment does not fall within a Listing, but nonetheless restricts her ability to perform basic work activities, the ALJ must then assess the claimant's residual functional capacity and the range of work activities that the claimant could perform despite his impairments. This evaluation must give consideration to claimant's subjective complaints, accounting for nature of pain, medication, treatment, functional restrictions, claimant's daily activities, and other relevant factors. 20 C.F.R. § 404.1512.

Additionally, pursuant to 20 C.F.R. § 404.1523, the ALJ is required to consider the disabling effect of multiple impairments:

>In determining whether your physical or mental impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to whether any such impairments if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. If we do not find that you have a medially severe combination of impairments, we will determine that you are not disabled.

Pain alone can be disabling. When a claimant claims disability based solely on pain, a three-part standard is utilized in assessing the credibility of his testimony. The claimant must establish evidence of an underlying impairment <u>and</u> either: (1) objective medical evidence to confirm the severity of pain alleged, or (2) a finding that the impairment is of such a severity that it can be reasonably expected to cause the pain alleged. *See, e.g.*, *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986); *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992) (emphasis added).

### IV. Analysis

This Court must remand the Commissioner's decision for two reasons: (1) the SSA ignored substantial evidence; and (2) the SSA failed to fully develop the record.

First, the SSA ignored the reasons for Plaintiff's failure to use prescription pain medications: Plaintiff testified that his free clinic would not dispense free pain medications. Second, the SSA ignored substantial evidence that from Plaintiff's treating physician, Dr. Hash, who noted that Plaintiff showed forminal stenosis with a disc protrusion at L5-S1 and Plaintiff continued to have pain down his left leg. Dr. Hash

8

recommend decompression and fusion, but the procedure was not approved. He also noted: "At this point, I feel I have done all I can for Mr. Smith without performing a surgical procedure." (R. 199.) While this occurred in October 5, 1999, the record establishes numerous visits to the free clinic and the emergency room from 2004 until after the alleged onset date of October 31, 2005, and beyond.

Moreover, there is nothing in the record to suggest that Plaintiff was able to perform work duties after the October 31, 2005 alleged onset date. Indeed, he had pain on straight leg raise in January 2006. While Plaintiff visited the emergency room in November of that same year after having tried to move a television set, one failed attempt to lift a television set of unknown weight does not necessarily conflict with Plaintiff's testimony of persistent pain.

Finally, despite Dr. Hash's bleak prognosis and Plaintiff's continued complaints of pain, the SSA failed to seek an opinion from Dr. Hash, a spine neurosurgeon, regarding Plaintiff's condition. Even if such an opinion could not be obtained, the SSA should have obtained a consultation by an orthopedist or some similar specialist.

Therefore, by separate order, the decision denying benefits will be reversed and remanded for further proceedings.

Done this 30th day of April, 2008.

_____
U.W. Clemon
United States District Judge